Jorge and Marisa **GOMEZ**, et al. Plaintiffs,

v.

**ILLINOIS STATE BOARD OF EDUCATION, et al.,**
**Defendants.**

**No. 85 C 3744.**

United States District Court, N.D. Illinois, E.D.

Aug. 26, 1987.

Arturo Juaregui, Mexican American Legal Defense and Educ. Fund, Chicago, Ill., for plaintiffs.

Beverly J. Tiesenga, Asst. Atty. Gen., State of Ill., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Plaintiffs Jorge Gomez, Marisa Gomez, Efrain Carmona, Alina Carmona, Maria Huerta, Juan Huerta, Cristina Calderon and Jaime Escobedo filed this action requesting class certification, and seeking declaratory and injunctive relief to enjoin the defendants' alleged violations of the Equal Educational Opportunities Act of 1974 (the "EEOA"), 20 U.S.C. sec. 1701 *et seq.*, the fourteenth amendment and Title VI of the Civil Rights Act of 1964. The defendants subsequently moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Judge Bua dismissed the action on July 12, 1985 without ruling upon the plaintiffs' request for class certification, (614 F.Supp. 342), and the plaintiffs appealed.

On appeal, the Seventh Circuit affirmed the dismissals of the plaintiffs' claims under the fourteenth amendment and Title VI, but reversed and remanded the dismissals of the plaintiffs' claims under the EEOA and the regulations promulgated pursuant to Title VI. 811 F.2d 1030. On June 17, 1987, the case was reassigned here. Before the court are the plaintiffs' motion for class certification under Fed.R. Civ.P. 23(b)(2), and the plaintiffs' motion to withdraw certain named plaintiffs and to add other individuals as named plaintiffs. For the reasons set forth below, the plaintiffs' motion for class certification is granted; the plaintiffs motion to withdraw and add certain individuals is granted in part and denied in part.

## I. STATEMENT OF FACTS

The facts underlying this suit have been reported on two previous occasions, and therefore will not be reported at length here. *See* 614 F.Supp. 342, 344; 811 F.2d 1030, 1032–35. Nevertheless, a brief description of the plaintiffs' surviving claims will prove helpful to an understanding of the Court's resolution of this motion.

In their complaint, the plaintiffs allege that they have been deprived them of the right to equal educational opportunities as the result of the defendants' violations of the EEOA and the regulations promulgated pursuant to Title VI. The plaintiff's allege, *inter alia,* that the defendants have:

(1) failed to promulgate objective and uniform guidelines in order to identify properly limited English-proficient students ("LEP students");

(2) failed to promulgate objective and uniform guidelines in order to determine properly when LEP students, already enrolled in remedial programs, may be placed in regular classrooms;

(3) failed to enforce state law;

(4) failed to supervise and ensure that local school districts comply with federal law requirements; and

(5) denied the plaintiffs equal access to educational programs for which the defendants have received federal financial assistance.

Pls.' Complaint pars. 28, 31.

We now address the plaintiffs' motions.

## II. DISCUSSION

The Court has broad discretion in determining whether a class should be certified under Rule 23. *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir.1986); *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D.Ill.1986). It is well settled that in deciding whether to certify a class, the Court cannot consider the merits of the underlying action, (*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974); *Eggleston v. Chicago Journeymen Plumbers,* 657 F.2d 890, 895 (7th Cir.1981)), and that the party seeking class certification bears the burden of establishing that certification is proper, (*Trotter v. Klincar,* 748 F.2d 1177, 1184 (7th Cir.1984)), under Rules 23(a) and (b).

In this case, therefore, the plaintiffs must demonstrate that all of the requirements of Rule 23(a) and (b)(2) are satisfied.

### A. *Rule 23(a)*

Subsection (a) of Rule 23 provides that: One or more members of a class may sue or be sued as representative parties on

behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a), in addition to its four express requirements, contains two implicit conditions which must be met: first, an identifiable class must exist; and second, the named representatives must be members of the class. *Edmondson v. Simon,* 86 F.R.D. 375, 379 (N.D.Ill.1980); *Helfand v. Cenco, Inc.,* 80 F.R.D. 1, 6 (N.D.Ill.1977); *see also* Miller, *An Overview of Federal Class Actions: Past, Present and Future,* 13, 15–18 (1977) [hereinafter *Miller* ]. The Court accordingly will address the six requirements of Rule 23(a) *seriatim.*

### 1. The existence of an identifiable class

█ Before a class can be certified, the party seeking certification must show that an identifiable class exists. An identifiable class exists if its members can be ascertained by reference to objective criteria. *Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir.1977). A class description is insufficient, however, if membership is contingent on the prospective member's state of mind. *Simer v. Rios,* 661 F.2d 655, 668–69 (7th Cir.1981); *Illinois Migrant Council v. Pilliod,* 540 F.2d 1062, 1072 (7th Cir.1976), *modified in part on rehearing en banc,* 548 F.2d 715 (7th Cir.1977).

In this case, the plaintiffs seek to certify the following class:

> All Spanish-speaking children who have been, are, or will be enrolled in Illinois public schools, and who have been, should have been, or should be assessed as limited English-proficient.

Complaint, par. 8.

█ We believe that this class description is flawed because it includes LEP children who are no longer *eligible* to attend Illinois public schools.[1] We also find, however, that this flaw is not fatal to the plaintiffs' motion. Specifically, the Court finds that the class description can be redefined[2] as follows to avoid the defect:

> All Spanish-speaking children who are or will be enrolled in Illinois public schools, or who are eligible or will be eligible to be enrolled in Illinois public schools, and who should have been, should be, or who have been, assessed as limited English proficient.

Therefore, we hold that an identifiable class exists.

### 2. Class membership

It is axiomatic that the named representative of a class must be a member of that class at the time of certification. *Davis v. Ball Memorial Hospital, Inc.,* 753 F.2d 1410, 1420 (7th Cir.1985). The defendants argue that seven of the eight named plaintiffs are not class members because "one has transitioned out of her bilingual education program, 4 have moved, 1 has dropped out and 1 has been assessed as having a learning disability." Defs.' Response, at 12. In support of this argument, the defendants rely heavily upon the affidavit of Maria Seidner, the manager of the ISBE's Transitional Bilingual Education Program.

---

**1.** The defendants also argue that the description is indefinite because determining "which children 'should have been' assessed as [LEP] is an extremely individualized inquiry * * * which *courts* are ill-equipped to make." Defs.' Response, at 4 (emphasis supplied). This reasoning is unpersuasive. The fact that the class description includes Spanish-speaking children who "should have been" assessed as LEP in no way entails the conclusion that this court—or any other—will do the assessing. The plaintiffs' complaint requests that this Court *declare* that the defendants are obligated under federal law to promulgate uniform guidelines which will enable state and local educational agencies to assess the language proficiency of Spanish-speaking students. Nowhere in their complaint do the plaintiffs request this Court to perform the assessments.

**2.** It is unquestioned, of course, that the court has the discretion to redefine a class under appropriate circumstances to bring the action within Rule 23. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* sec. 1760 at 128 (1986).

In response, the plaintiffs concede that three of the named representatives (Cristina Calderon, Jaime Escobedo and Alina Carmona) will no longer benefit from the relief sought (if granted), and have moved to "withdraw" them and to "substitute or add" three other named representatives: Angia Carmona, Maria Carmona and Sergio Gomez. The defendants reply that the new representatives lack standing[3] to sue.[4]

■ In order to have standing to sue under Article III of the Constitution, a plaintiff must show that: he personally has suffered an actual or threatened injury as a result of the defendant's alleged unlawful conduct; the injury is fairly traceable to the defendant's challenged conduct; and that the injury is likely to be redressed by a favorable decision. *Diamond v. Charles*, 476 U.S. 54, 106 S.Ct. 1697, 1703, 1707–08, 90 L.Ed.2d 48 (1986); *City of Evanston v. Regional Transportation Authority*, 825 F.2d 1121, 1123 (7th Cir.1987).

In this case, the plaintiffs claim standing under sec. 1703(f) of the EEOA, which provides that the defendants are required to take "appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs." As the court of appeals held, if the defendants failed to take such "appropriate action," then the plaintiffs will be injured in that they will have been deprived of equal educational opportunity. *See* 811 F.2d at 1043–44. Since the plaintiffs have adequately alleged this cause of action, the only remaining question is whether they fit within the class definition. We find that each of the five remaining named plaintiffs has standing to sue, but that the three individuals whom the plaintiffs seek to add do not.

According to the allegations of the complaint, which we must accept as true, Jorge Gomez, Marisa Gomez, Maria Huerta, Juan Huerta[5] and Efrain Carmona are Spanish-speaking children who are enrolled in Illinois public schools, or who are eligible to be enrolled in Illinois public schools, and who have been improperly assessed or who have not been assessed for language proficiency, (Complaint, pars. 11–12, 15, 17); and that they have been "denied appropriate educational services." (Complaint, par. 23.) We hold, therefore, that all of these plaintiffs are class members and have standing to sue.

With respect to the three individuals whom the plaintiffs seek to add, Angia Carmona, Maria Carmona and Sergio Gomez, the Court finds that the plaintiffs have not adequately established that these individuals are class members. Specifically, the plaintiffs have neither submitted affidavits nor sought leave to amend their complaint in order to show that these individuals are in fact members of the class. On the basis of this record,[6] therefore, the Court holds that Angia Carmona, Maria Carmona and Sergio Gomez lack standing to maintain this action.[7]

3. Numerosity

■ Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable[.]" "Impractica-

3. The Court may properly consider Maria Seidner's affidavit in determining whether the named representatives possess standing to sue. *See Community for Creative Non–Violence v. Pierce*, 814 F.2d 663, 666 (D.C.Cir.1987). Due to the fact that Ms. Seidner's affidavit does not affect the Court's ruling, the Court will not address the plaintiffs' hearsay objections to the affidavit.

4. The defendants also contend that the newly named representatives may not be substituted under Fed.R.Civ.P. 25. Although the plaintiffs have designated their motion as one for "Substitution of Parties", the Court believes that the applicable rule is Fed.R.Civ.P. 21, which provides in relevant part that: "Parties may be dropped or added by order of the court * * * at any stage of the action and on such terms as are just."

5. Although Juan Huerta is not a named plaintiff on the complaint, the Court, pursuant to Fed.R. Civ.P. 21, on its own initiative, hereby adds him as a named plaintiff.

6. The Court will, of course, reconsider its ruling upon the submission of the appropriate documentation by the plaintiffs.

7. Accordingly, the plaintiffs' motion to add these individuals is denied, subject to the proviso set forth in *supra* note 6.

ble" does not mean impossible. Rather, this requirement will be met if joinder of all members is extremely difficult or inconvenient. 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* sec. 1762 (1986). In determining whether joinder of all class members is impracticable, the court should consider factors including the size of the class, the geographic dispersion of the members, (*Tenants Association for a Better Spaulding v. United States Department of Housing and Urban Development*, 97 F.R.D. 726, 729 (N.D.Ill. 1983)), the nature of the relief sought, and the practicality of forcing relitigation of a common core of issues. *Rosario v. Cook County*, 101 F.R.D. 659, 661 (N.D.Ill.1983); *see also Phillips v. Joint Legislative Committee*, 637 F.2d 1014, 1022 (5th Cir.1981).

Applying this analysis to the instant case, it is clear that the members of the class which the plaintiffs seek to certify are so numerous as to make joinder impracticable. The plaintiffs support their position by citing certain census figures gathered by the ISBE which indicate that more than 6,000 Spanish-speaking children have not been properly assessed as LEP children. The defendants argue, however, that the statistics upon which the plaintiffs rely are inaccurate and therefore must be disregarded.

█ The Court finds it unnecessary to address the parties' positions with respect to the statistical data. Even if the statistics were entirely unreliable and invalid, the Court would still find that the numerosity requirement is satisfied. A court is entitled to make a good faith estimate of the number of class members. *Borowski v. City of Burbank*, 101 F.R.D. 59, 61 (N.D.Ill.1984); *see also Ragsdale v. Turnock*, 625 F.Supp. 1212, 1220 (N.D.Ill.1985); *Grossman v. Waste Management, Inc.*, 100 F.R.D. 781, 785 (N.D.Ill.1984). In this case, it is entirely reasonable that there are hundreds, possibly thousands, of Spanish speaking children dispersed over the entire state of Illinois who fit squarely within the class definition set forth above.

█ The Court also notes that numerosity is met where, as here, the class includes individuals who will become members *in the future*. As members *in futuro*, they are necessarily unidentifiable, and therefore joinder is clearly impracticable. *See, e.g., Phillips v. Joint Legislative Committee*, 637 F.2d 1014, 1022 (5th Cir.1981); *Tonya K. v. Chicago Board of Education*, 551 F.Supp. 1107, 1110 (N.D.Ill.1982). Finally, the Court finds that there is no reason to force relitigation of the issues presented in this action. Accordingly, numerosity is satisfied.

### 4. Commonality

Under Rule 23(a)(2), the party seeking class certification must demonstrate that "there are questions of law or fact common to the class[.]" However, "[t]here need only be a single issue [of law or fact] common to all members of the class," (*Edmondson v. Simon*, 86 F.R.D. 375, 380 (N.D. Ill.1980)), and differences in individual class members' cases concerning damages or treatments will not defeat commonality. *Tonya K. v. Chicago Board of Education*, 551 F.Supp. 1107, 1110 (N.D.Ill. 1982). "Especially in the context of Rule 23(b)(2) class actions, distinct factual contexts will be unified under a common claim for equitable relief." *Christiano v. Courts of Justices of the Peace*, 115 F.R.D. 240, 247–48 (D.Del.1987). Thus, "[w]here a question of law refers to * * * standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and * * * commonality * * * is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D.Ill.1984); *see also Edmondson v. Simon*, 86 F.R.D. 375, 380 (N.D.Ill.1980) ("Where an across-the-board or permeating policy of discrimination is alleged in a class action, * * * commonality is satisfied.").

Commonality is met in this case. The plaintiffs allege, *inter alia*, that the defendants have violated federal law because of their failure to promulgate uniform guidelines to identify and place LEP children. The lack of uniform guidelines necessarily impacts all class members and thus

constitutes a policy or standardized conduct (or lack thereof) toward the plaintiff class.[8]

### 5. Typicality

Subsection 3 of Rule 23(a) provides that "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Although commentators are in substantial agreement that the typicality requirement has no meaning independent of Rule 23(a)'s other requirements,[9] the courts have nevertheless continued to attempt to infuse life into subdivision (a)(3). *See e.g., Massengill v. Board of Education, Antioch Community High,* 88 F.R.D. 181, 184 (N.D.Ill.1980). This, in turn, has generated much confusion in the decisions as to the proper relationship of typicality to commonality and representativeness.

The Seventh Circuit addressed the analytical role served by (a)(3) in *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225 (7th Cir.1983):

Subsection 3 of Rule 23(a) * * * addresses the issue of how the claims of the class representatives interrelate with the claims of the class as a whole. Commentators apparently consider subsection (a)(3) (typicality) to overlap subsection (a)(2)'s concern with commonality of issues and subsection (a)(4)'s concern with adequate representation * * *. We think, however, that subsection (a)(3) primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large. "A plaintiff's claim·is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." H. Newberg, *Class Actions,* sec. 1115(b) at 185 (1977); *Resnick v. American Dental Ass'n.,* 90 F.R.D. 530,

539 (N.D.Ill.1981); *Edmondson v. Simon,* 86 F.R.D. 375, 380–81 (N.D.Ill. 1980).

The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.

*Id.* at 232.

In this case, the named plaintiffs' claims are all based on the same legal theories and arise from the same practice or course of conduct that gives rise to the absentee class members' claims: namely, the defendants' failure to promulgate uniform guidelines by which properly to assess LEP children and to enforce state and federal law. Furthermore, the defendants have made no suggestion that the named plaintiffs' claims are subject to a unique defense which will likely be the major focus of the litigation and thereby destroy typicality. *See Patterson v. General Motors Corp.,* 631 F.2d 476, 481 (7th Cir.1980); *Borowski v. City of Burbank,* 101 F.R.D. 59, 63 (N.D.Ill.1984). Therefore, the typicality requirement is satisfied.

### 6. Adequacy of representation

█ Adequate representation is the foundation of all representative actions, (*In re General Motors Corp. Engine Interchange Litigation,* 594 F.2d 1106, 1121 (7th Cir.1979)), and embodies the due process requirement that each litigant is entitled to his day in court. *Helfand v. Cenco, Inc.,* 80 F.R.D. 1, 6 (N.D.Ill.1977). "Because a class action judgment would bind absent class members, strict enforcement of [subsection (a)(4)] is vitally necessary in order to ensure 'that protection to absent

---

**8.** The Court also notes that a common question of fact exists regarding the defendants' conduct with respect to supervising local school districts, and enforcing state and federal law.

**9.** *See* Twyner, *Federal Rule of Civil Procedure 23(a)(3) Typicality Requirement: The Superfluous Prerequisite to Maintaining a Class Action,*

42 Ohio St.L.J. 797 (1981); Steininger, *Class Actions: Defining the Typical and Representative Plaintiff Under Subsections (a)(3) and (4) of Federal Rule 23,* 53 B.U.L.Rev. 406 (1973); *Miller,* at 27 ("[W]hen all is said and done, there does not really seem to be terribly much of independent significance to subdivision (a)(3).").

parties which due process requires.' "[10] *Wagner v. Lehman Bros. Kuhn Loeb Inc.,* 646 F.Supp. 643, 660 (N.D.Ill.1986), *quoting Hansberry v. Lee,* 311 U.S. 32, 45, 61 S.Ct. 115, 119, 85 L.Ed. 22 (1940); Fed.R.Civ.P. 23(c)(3). Thus, due process requires that absent class members be adequately represented in order to prevent a collateral attack on the judgment. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 2975, 86 L.Ed.2d 628 (1985); *Susman v. Lincoln American Corp.,* 561 F.2d 86, 89–90 (7th Cir.1977).

■ In determining whether the named plaintiffs adequately represent the absentee class members' interests, the Court must inquire into the adequacy of the named plaintiffs' counsel and the named plaintiffs' interests in protecting the interests of absentee class members. *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir.1986). Each is considered below.

### a. Adequacy of counsel

The defendants do not take issue with the adequacy of plaintiffs' counsel. *See* Defs.' Response, at 13. Nevertheless, due to the existence of constitutional concerns the Court is obligated to ensure that the case is in the care of competent counsel.[11] Indeed, the Court's obligation to inquire into the adequacy of representation does not end with the motion for certification, but is continuing in order to ensure that due process is satisfied at all stages of the proceeding. *Helfand,* 80 F.R.D. at 7.

■ Factors involved in an examination of the adequacy of counsel include: the nature of the relationship between the named plaintiffs and counsel; counsel's experience in handling the type of litigation involved; counsel's motivation; counsel's support staff; and counsel's other professional commitments. *See generally Miller,* at 34–36.

Plaintiffs' counsel, the Mexican American Legal Defense and Educational Fund, Inc. (MALDEF), is a national civil rights legal organization which has advocated and defended the rights of Hispanics in many civil rights cases, often in the context of class actions. *See e.g., Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). *Illinois Migrant Council v. Pilliod,* 531 F.Supp. 1011 (N.D.Ill.1982); *Doe v. Miller,* 573 F.Supp. 461 (N.D.Ill.1983); *Rybicki v. State Board of Elections,* 574 F.Supp. 1082 (N.D.Ill.1982). MALDEF has offices in six cities spread throughout the continental United States, and employs two attorneys in its regional office in Chicago.

■ Where, as here, attorneys have been found to be adequate in the past, it is persuasive evidence that they will be adequate again. *Beckless v. Heckler,* 622 F.Supp. 715, 721 (N.D.Ill.1985). There is no indication that the relationship between any of the named plaintiffs and MALDEF is such that it would undermine counsel's impartiality toward all of the class members in prosecuting this action. Nor is there any evidence that counsel's motivation in bringing this suit as a class action is improper,[12] or that counsel has other professional commitments which are antagonistic to, or which would detract from, its efforts to secure a favorable decision for the class in this case. Indeed, we note that counsel, after the plaintiffs' complaint was initially dismissed, successfully appealed the dismissal to the Seventh Circuit and since has zealously prosecuted the action in this Court. Counsel's performance in this action also indicates that counsel possesses

**10.** One of the principal reasons for enacting Rule 23 was to ensure that all members of the class would be bound by the court's judgment, whether favorable or unfavorable. Advisory Committee Note, 39 F.R.D. 98, 99 (1966).

**11.** We therefore decline to adopt the reasoning that competence will be presumed if a party opposing a motion for class certification fails to challenge the adequacy of counsel.

The rationale for this rejection is obvious: the focus of this reasoning is on the *opponent.* We believe that the focus should be on the *absentee members,* and therefore that such an inquiry must be made regardless of the opponent's actions.

**12.** For example, the defendants do not claim that the plaintiffs have brought this suit as a class action in order to pressure them into settling, much in the manner of a "strike suit."

adequate resources to represent the class competently. We find, therefore, that counsel is adequate.

### b. Adequacy of the named representatives

██ In ascertaining whether a named representative will adequately protect the interest of absentee class members, courts have applied a number of tests: the "benefit" test; the "no-conflict" test; and the "exact-equation" test.[13] The Court believes that both the "benefit" and no-conflict" tests must be met in order for a named plaintiff to adequately represent absentee class members. In other words, the interests of the named plaintiffs must be coextensive with those of the absentee class members. "It is axiomatic that a named representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives of those he purports to represent." 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* sec. 1768 at 326 (1986) (collecting cases); *see also Schy v. Susquehanna Corporation;* 419 F.2d 1112, 1117 (7th Cir.1970), *citing Hansberry v. Lee,* 311 U.S. 32, 44–45, 61 S.Ct. 115, 119, 85 L.Ed. 22 (1940).

Over and above the requirement that there be no antagonisms between the representative and the class, the court must also examine the interests of the representative and class in relation to the remedy sought, the so-called "benefit" test. All of the class members should benefit from the relief which is granted. "If the ultimate relief sought [is] granted in order to vindicate [an] alleged common injury, then that relief would of necessity be the type [in] which both the representative and class members share a common [interest]." Steininger, *Class Actions,* at 418.

Applying these tests to the facts of this case, the Court finds that the named representatives will adequately protect the interests of the class. First, there are no conflicts between the named representatives and the other class members. The courts have recognized two distinct types of conflicts, neither of which is applicable here: long-term economic consequences which will adversely affect class members; and relief to which a new status attaches which will not be in other class members' interests. *See* Steininger, *Class Actions,* at 418 (citations omitted). In the instant case, there are no foreseeable long-term economic consequences which might adversely affect class members. Second, although some class members may receive a new status (namely, that of LEP children) which they sincerely believe is not in their interest, we do not find that such a belief is reasonable. Viewed objectively, it is in the interest of all of the class members to be correctly assessed and placed in order to overcome the language deficiencies from which they may suffer. There are, therefore, no antagonisms which militate against the named plaintiffs serving as class representatives in this case.

Additionally, in the event a decision in favor of the class is reached, all of the class members will benefit: all of the class members' language proficiencies will be assessed according to uniform guidelines and placed in appropriate educational settings.

Finally, as set forth in their Complaint, all of the named representatives have a substantial stake in the outcome of this action (namely, the quality of his or her education), and also have, as indicated by the history of this litigation, both the resources and resolve to see it through to its conclusion. The representatives will adequately protect the interests of the class.

Accordingly, the plaintiffs have satisfied the requirements of Rule 23(a).

### B. Rule 23(b)(2)

A party seeking class certification not only must satisfy the requirements of Rule

---

**13.** Under the "benefit" test, (a)(4) is satisfied if the proposed class will benefit from the action. *See Eisen v. Carlisle & Jacquelin,* 391 F.2d 555 (2d Cir.1968). The "no-conflict" test is met if there is no conflict between the claims of the named representative and those of the class.

*See Weiss v. Tenney Corp.,* 47 F.R.D. 283, 290 (S.D.N.Y.1969). The "exact-equation" test requires that the named representative positively show that he can adequately represent the interests of the class. *See Mudd v. Busse,* 68 F.R.D. 522, 529 (N.D.Ind.1975).

23(a), he also must satisfy one of the subsections of Rule 23(b). In this case, the plaintiffs seek certification under Rule 23(b)(2) which provides:

> (b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> > (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]

Section (b)(2) thus contains two requirements: first, the party opposing the class must have acted or refused to act on grounds "generally applicable" to the class as a whole. Second, final injunctive or corresponding declaratory relief must be appropriate. *See Edmondson v. Simon*, 86 F.R.D. 375, 382 (N.D.Ill.1980). Both requirements are satisfied here.

The defendants, by refusing to promulgate uniform guidelines by which to assess and place LEP children, and by refusing to supervise local school districts' implementation of assessment guidelines and placement of LEP children, have clearly "refused to act on grounds generally applicable to the class." Therefore, the first prong of (b)(2) is met.

Similarly, final injunctive and declaratory relief is appropriate in this case. Subsection (b)(2) of Rule 23 was intended to cover cases in which equitable relief will settle the legality of the behavior with respect to the class as a whole. Advisory Committee Note, 39 F.R.D. 73,102 (1966). Here, the plaintiffs request a declaration that the defendants' action or inaction constitutes a violation of federal law, and an injunction to prevent further violations. The declarations sought by the plaintiffs will "settl[e] the legality of the [defendants'] behavior with respect to the class as a whole * * *." *Id.* If in fact the defendants' conduct is declared to be unlawful, final injunctive relief enjoining it will be appropriate. We hold, therefore, that the requirements of Rule 23(b)(2) are satisfied.

### III. CONCLUSION

For the reasons stated above, it is hereby ordered that:

(1) the following class is certified pursuant to Fed.R.Civ.P. 23(b)(2):

> All Spanish-speaking children who are or will be enrolled in Illinois public schools, or who are eligible or will be eligible to be enrolled in Illinois public schools, and who should have been, should be, or who have been, assessed as limited English-proficient;

(2) the plaintiffs' motion to withdraw Cristina Calderon, Jaime Escobedo and Alina Carmona is GRANTED; and

(3) the plaintiffs' motion to add Angia Carmona, Maria Carmona and Sergio Gomez is DENIED.